UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
PAUL DeANGELO,

         Plaintiff,

  -against-

GEORGE WESTON BAKERIES, INC., STEVEN NAGEL
and DOES 1 THROUGH 20, in their individual and official
capacities.

         Defendants.
-------------------------------------------------------------------- X

CV 06 1712

WEINSTEIN, J.

LINDSAY, M.J.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 13 2006 ★
BROOKLYN OFFICE

## COMPLAINT

Plaintiff, Paul DeAngelo, by and through his attorneys, Giskan & Solotaroff, alleges the following upon information and belief, against George Weston Bakeries, Inc., Steven Nagel and Does 1 through 20 (collectively referred to as "Defendants").

## NATURE OF THE ACTION

1. This is a lawsuit alleging violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2901, *et seq.* (the "FMLA"), and discrimination in employment on the basis of disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"), the New York State Human Rights Law and New York Executive Law § 290, *et seq.* (hereinafter collectively referred to as "the anti-discrimination laws").

2. Defendants have violated the FMLA by terminating Plaintiff for missing sixteen (16) days of work in a one year period, despite the fact that Plaintiff's leave had been approved under the FMLA in order for him to obtain necessary medical treatment.

3. Defendants have engaged in discrimination against Plaintiff by terminating Plaintiff's employment as a result of his having a medical condition which caused Plaintiff to suffer a disability as defined under the ADA. Indeed, as a result of contracting Hepatitis C, Plaintiff was periodically incapacitated and unable to perform major life functions, including working. Alternatively, Defendants perceived Plaintiff as suffering from a disability under the ADA.

4. Plaintiff seeks all available relief, including injunctive relief, compensatory damages, punitive damages and attorneys fees.

## JURISDICTION AND VENUE

5. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. §§ 1331 and 1343(3), and 28 U.S.C. § 1367(a) for claims arising under the New York City Human Rights Law, based on the doctrine of supplemental jurisdiction in that such claims arise from a common nucleus of operative fact and are so intertwined with other matters pending before the Court as to make exercise of supplemental jurisdiction appropriate.

6. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under the ADA. This action is founded on Plaintiff's complaint timely filed at the New York State Human Rights Commission ("NYSHRC") on or around August 18, 2005, and the work-share arrangement between the NYSHRC and the Equal Employment and Opportunity Commission ("EEOC"). The EEOC issued Plaintiff a notice of right to sue on or about January 24, 2006. A copy of Plaintiff's EEOC notice of right to sue is attached hereto as Exhibit A. Plaintiff has filed this action in Federal Court within 90 days of his receipt of his EEOC notice of right to sue.

7. Venue is properly placed in the Eastern District of New York under 28 U.S.C. §1391(b) and 42 U.S.C. § 2000e-5(f)(3) in that Defendants do business in this district, a substantial

part of the events giving rise to the claims arose in this district, the records relevant to the practices complained of herein are located in this district, and Plaintiff resides in this district.

## THE PARTIES

8.  Plaintiff, Paul DeAngelo, resides at 12F LeBonne Vie Drive, Patchogue, New York, 11772. In or around September 1996, Plaintiff was hired as a Supervisor in the Packing and Maintenance Department of Entenmann's, Inc., a division of defendant George Weston Bakeries, Inc., located at 1724 Fifth Avenue, Bayshore, New York 11706. On October 28, 2004, plaintiff's employment with Entenmann's Inc. was terminated without severance.

9.  Defendant George Weston Bakeries, Inc. ("GW Bakeries") is a privately held corporation with its headquarters located at 255 Business Center Drive, Horsham, PA 19044. GW Bakeries is a producer of baked goods, including the Entenmann's brand. Defendant GW Bakeries is an employer as defined by the New York State Human Rights Law.

10. Defendant Steven Nagel, is, and at all relevant times was, the plant manager for Entenmann's Inc., a division of GW Bakeries, where Plaintiff was employed. Defendant Nagel was responsible for Plaintiff's termination on October 28, 2004. He is sued in both his individual and official capacities.

11. Does 1 through 20 are the other officers and employees of GW Bakeries who (a) caused Plaintiff to suffer discriminatory treatment and/or condoned, ratified and/or authorized such conduct by others; and/or (b) violated the FMLA by terminating Plaintiff for having missed 16 days of work within a one year period for necessary and approved medical leave under the FMLA.

## **ALLEGATIONS OF FACT**

12.   In or around September 1996, Plaintiff was hired as a Supervisor in the Packing and Maintenance Department of Entenmann's Inc., a division of GW Bakeries, located at 1724 Fifth Avenue, Bayshore, New York 11706.

13.   From September 1996 through 2003, Plaintiff's attendance and work performance were exceptional. Plaintiff received several letters of commendation from his supervisors concerning his work performance, as well as awards for perfect attendance. Plaintiff also was instrumental in developing a highly efficient and productive operation in his area of supervision.

14.   In February 2002, Plaintiff achieved the title of "Ultimate Supervisor", an award given to select employees in the operations division who demonstrate both a commitment to safety and perfect attendance. Mike Tansey, the Director of Operations, wrote to notify Plaintiff of his achievement and stated:

> This achievement is a reflection of who you are and a testimony of your dedication to safety, as well as your department. You are a role model for your peers and crew. . . . only a few have achieved what you have. Continue your commitment to safety and build on this accomplishment in 2002. I thank you.

15.   In or around September 2002, Plaintiff was diagnosed with Hepatitis C, a chronic condition which requires periodic medical treatments resulting in periods of incapacity.

16.   In or around October 2003, it became necessary for Plaintiff to undergo regular treatments of interferon injections for his Hepatitis C. Prior to this time, Plaintiff had an exemplary attendance record and had accumulated more than three years of perfect attendance.

17.   In or around October 2003, Plaintiff alerted both his immediate supervisor, Mr. Al Scarpelli, and Defendant Nagel of his medical condition and the fact that he would be required to

4

miss a certain number of work days as a result of his necessary medical treatments. As a management employee, Plaintiff was entitled to unlimited sick leave.

18. The interferon injections required to treat Hepatitis C made Plaintiff extremely fatigued and caused Plaintiff to suffer debilitating symptoms including chills, fever, malaise, muscle aches, and headaches. These symptoms would commence immediately following his injections and would last a couple of days thereafter. As a result of his illness and the prescribed treatments, Plaintiff was unable to work on the day of, and certain days immediately following, his interferon injections. Plaintiff thus suffered a disability as defined by the ADA in that his illness made him periodically incapacitated, during which time he was unable to perform the major life function of working. Alternatively, Defendants perceived plaintiff as suffering from a disability under the ADA.

19. In or around October 2003, Plaintiff's treating physician indicated in writing to Entenmann's Inc. that Plaintiff's Hepatitis C, and the resulting periods of incapacity, possibly could last the rest of his life.

20. On October 14, 20043, Plaintiff requested necessary medical leave under the FMLA to receive his interferon injections for the period October 22, 2003 through October 22, 2004. Plaintiff's request for leave was supported by his health care provider's certification. On November 6, 2003, Plaintiff's request for leave under the FMLA was approved by his supervisor, his department manager and the human resources department at Entenmann's Inc.

21. From October 22, 2003 through October 22, 2004, Plaintiff missed approximately sixteen (16) days of work for his necessary medical treatments. Repeatedly, Plaintiff was advised by his supervisors that the time he had to take off from work for his medical treatments

was fully approved.

22. Plaintiff complied with the requirements of his approved leave under the FMLA. Plaintiff also made reasonable efforts to coordinate his medical treatments with his supervisors in advance and to schedule his treatments on days which his supervisors could afford him to be absent from work. Approximately 80% of the 16 days that Plaintiff missed work during the period October 22, 2003 through October 22, 2004, were for scheduled doctor's appointments and treatments.

23. On certain days when Plaintiff came in to work following his interferon treatments, his supervisor Bill Zeppelin, the Maintenance Manager, told Plaintiff to go home because he did not look well. Mr. Zeppelin assured Plaintiff that he should not worry about losing his job. Mr. Scarapelli, the Maintenance Superintendent and Plaintiff's immediate supervisor, was present during these conversations between Plaintiff and Mr. Zeppelin concerning Plaintiff's necessary medical absences. Nevertheless, Defendant Nagel became critical of Plaintiff's job performance at certain times following his interferon treatments.

24. On October 23, 2004, the day Plaintiff's approved leave under the FMLA expired, Entenmann's Inc. terminated Plaintiff's employment. Defendant Nagel advised Plaintiff that he was being terminated because he had missed sixteen (16) days in the past year, and that union employees were not entitled to miss that many days. Plaintiff, however, was not a union employee and was entitled to unlimited sick days as a management employee. Moreover, all of Plaintiff's medical leave taken during the prior year had been approved under the FMLA. Defendant Nagel also said that Plaintiff's job performance had suffered during the time he had undergone his necessary medical treatments.

25. Plaintiff was not given any severance pay, although in accordance with company policy, he was entitled to receive at least one week's pay for each year of employment - approximately eight weeks of pay. Plaintiff raised the issue of his entitlement to severance pay with Don Cobertson, the Director of Human Resources at Entenmann's Inc. Mr. Cobertson admitted that the company's failure to award Plaintiff severance pay was wrong and advised Plaintiff to seek legal counsel.

26. Plaintiff is aware of other former employees of Entenmann's Inc. who have been terminated for poor job performance, without having suffered a disability, actual or perceived, and who have received their severance pay.

27. Since his termination by Entenmann's Inc., Plaintiff was able to obtain comparable employment as a maintenance manager with the company Olga G. Marcus from approximately June 2005 through December 2005. In or around December 2005, Olga G. Marcus went out of business. Since this time, Plaintiff has been looking for comparable employment but has not obtained any.

## FIRST CLAIM FOR RELIEF
## (DISCRIMINATION UNDER THE ADA)

28. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 27 above with the same force and effect as if fully set forth herein.

29. Plaintiff has satisfied all the procedural requirements of the ADA as a condition of filing this action, in particular: Plaintiff filed timely written charges of discrimination with the NYSHRC, received notice of right to sue from the EEOC, and filed his original Complaint in Federal Court within ninety (90) days from receipt of the EEOC notice of right to sue on which

7

this lawsuit is based.

30. Defendants are subject to the ADA

31. Plaintiff is a qualified person under the ADA. Plaintiff suffers from a disability which substantially limits a major life function within the meaning of the ADA. As a result of contracting Hepatitis C, Plaintiff was periodically incapacitated and unable to perform major life functions, including working, on the day of and certain days following his interferon treatments. Alternatively, defendants perceived Plaintiff as suffering from a disability under the ADA.

32. Plaintiff otherwise is, and at all relevant times was, qualified to perform the essential functions of his job with Entenmann's Inc., with reasonable accommodation. In fact, Plaintiff requested, and defendants approved, Plaintiff's leave from work under the FMLA to obtain necessary medical treatments for Hepatitis C.

33. Defendants took adverse employment action against Plaintiff because of his actual or perceived disability. Defendants' actions constitute unlawful discrimination in employment on the basis of disability in violation of the ADA .

34. Plaintiff has suffered irreparable injury caused by Defendants' illegal conduct, including interference with his right to be free of employment discrimination based upon his actual or perceived disability.

35. As a direct and proximate result of Defendants' unlawful acts, Plaintiff has suffered distress and loss of employment, including loss of income, benefits and pension.

36. As a result of the foregoing, Plaintiff is entitled to compensatory damages pursuant to the ADA in amounts to be determined at trial.

## SECOND CLAIM FOR RELIEF
## (VIOLATION OF THE FMLA)

37. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 27 above with the same force and effect as if fully set forth herein.

38. On of the primary purposes of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2901, *et seq.* (the "FMLA"), is "to entitle employees to take reasonable leave for medical reasons."

39. Plaintiff is an eligible employee as defined by the FMLA: (1) he was employed by Entenmann's Inc. for at least twelve (12) months - and in fact, Plaintiff was employed by Entenmann's Inc. for approximately eight years when he requested leave under the FMLA; and (2) he was employed by Entenmann's Inc. at a work site with fifty (50) or more employees.

40. The FMLA § 102 provides, that:

> an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12- month period for one or more of the following reasons:
> . . . . .
>
> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

41. In or around October 2003, Plaintiff requested leave under the FMLA for necessary medical treatment for his Hepatitis C during the period October 22, 2003 through October 22, 2004. Plaintiff's request for leave was supported by a certification issued by his health care provider. Plaintiff's request for leave under the FMLA was approved by his employer in November 2004.

42. Plaintiff fulfilled his duties under the FMLA, §102 (e) in that (a) to the extent that

9

his leave for necessary medical treatment was foreseeable based on planned medical treatment, Plaintiff made reasonable efforts to schedule the treatment so as not to disrupt unduly the operations of his employer; and (b) Plaintiff provided advance notice to his employer of his necessary medical treatments.

43. The FMLA, § 104 states that:

any eligible employee who takes leave under § 102 for the intended purpose of the leave shall be entitled, on return from such leave--

(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or

(B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

44. The FMLA, § 104 also states, "The taking of leave under § 102 shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced."

45. The FMLA, § 105(a) (1) states that, "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or an attempt to exercise, any right provided under this title." The FMLA § 105(a)(2) states that, "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title."

46. Defendants violated the FMLA by (1) discharging Plaintiff for taking 16 days of necessary medical leave as Plaintiff requested, and as defendants approved, under the FMLA during the one year period, October 22, 2003 through October 22, 2004; (2) failing to restore Plaintiff to the position of employment which he held when his leave under the FMLA commenced; (3) failing to restore Plaintiff to an equivalent position with equivalent employment

10

benefits, pay, and other terms and conditions of employment following his approved medical leave under the FMLA; and (4) denying Plaintiff employment benefits, including his severance pay, which accrued prior to the time his leave under the FMLA commenced.

47. The FMLA, 29 U.S.C. § 209 (a)(1)(A) provides for actual damages for the employer's violation of § 105 as follows:

> Any employer who violates § 105 shall be liable to any eligible employee affected (A) for damages equal to (I) the amount of – (I) any wages, salary, employment benefits, or other compensation denied of lost to such employee by reason of the violation; . . . (iii) the interest on the amount described in clause (I) calculated at the prevailing rate; and (iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (I) and the interest described in clause (ii).

48. The FMLA, 29 U.S.C. § 209 (a)(1)(B) provides for "such equitable relief as may be appropriate, including employment, reinstatement, and promotion."

49. As a result of defendants' violation of the FMLA, Plaintiff is entitled to damages, including actual damages and injunctive relief.

### THIRD CLAIM FOR RELIEF
### (VIOLATION OF NYSHR LAW)

50. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 27 above with the same force and effect as if fully set forth herein.

51. This claim is brought pursuant to the supplemental jurisdiction of this Court, under NYSHRL, Executive Law §§ 290 *et seq.*

52. The NYSHRL prohibits employment discrimination because of disability. N.Y. Exec. Law § 296(2).

53. "Disability" is defined under N.Y. Exec. Law § 292(21) as:

11

    (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques, or

    (b) a record of such impairment, or

    (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held.

54. Plaintiff suffered from a disability within the meaning of the NYSHRL. Plaintiff's medical provider diagnosed him as having Hepatitis C, an anatomical condition which prevents the exercise of a normal bodily function and/or is demonstrable by medically accepted clinical or laboratory diagnostic techniques.

55. Plaintiff otherwise is, and at all relevant times was, qualified to perform the essential functions of his job with Entenmann's Inc., with reasonable accommodation. In fact, Plaintiff requested, and defendants granted, Plaintiff leave from work under the FMLA in order to obtain necessary medical treatments for his Hepatitis C.

56. Defendants' practice of subjecting Plaintiff to discriminatory conduct in terms of employment on the basis of his disability constitutes unlawful discrimination in violation of NYSHRL, Executive Law §§ 290 *et seq.*, and Plaintiff is entitled to damages as a result.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

57. Issue a permanent injunction requiring Defendants, *inter alia,* to restore Plaintiff to

his position with Entenmann's Inc. and to provide him with all accompanying benefits in full, effective as of October 23, 2004.

58. Grant such additional equitable relief as the Court finds proper and just.

59. Order that Defendants immediately reimburse, and make whole, Plaintiff for any and all loss of income and benefits he would have received had it not been for Defendants' illegal from the time of the Defendants' illegal actions taken against Plaintiff.

60. Award compensatory damages for the pain, suffering, emotional distress, loss of dignity, humiliation, and damages to reputation and livelihood endured by Plaintiff in amounts that are fair, just and reasonable as determined at trial.

61. Award Plaintiff punitive damages in an amount to be determined at trial.

62. Award Plaintiff all costs of this action and reasonable attorney's fees, reasonable expert and witness fees, and other costs of the action as provided for by the FMLA, 29 U.S.C. § 107 (a)(3) and the ADA, 42 U.S.C. §§ 12205, 12117.

63. Grant Plaintiff such other relief as the Court deems appropriate and equitable, including injunctive and declaratory relief as may be required in the interest of justice.

## JURY DEMAND

Plaintiff demands trial by jury of all issues as of right by a jury.

Dated: April 12, 2006
      New York, New York      GISKAN & SOLOTAROFF

*[signature]*

Catherine E. Anderson, Esq. (CA 5129)
207 West 25th Street, 4th Floor
New York, NY 10001
Tel: (212) 847-8315
Email: cathander@att.net

Counsel for Plaintiff

A

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Paul Deangelo
12f Lebonne Vie Drive
Patchogue, NY 11772

From: New York District Office - 520
33 Whitehall Street
5th Floor
New York, NY 10004

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2005-03115 | Holly M. Woodyard, Investigator | (212) 336-3643 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other (briefly state)  **Dismissed, charge already filed**

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____          1/24/06
Spencer H. Lewis, Jr.,                     (Date Mailed)
Director

Enclosures(s)

cc: GEORGE WESTON BAKERIES, INC.
255 Business Center Drive
Horsham, PA 19044
Att: Jonathan T. Berger