UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
PAUL DeANGELO and ALFRED
SCARPELLI,

                 Plaintiffs,

      - against -

ENTENMANN'S, INC., STEVEN NAGLE,
WILLIAM ZEPPELIN, and DONALD
CULBERTSON, in their individual and
official capacities,

                 Defendants.
---------------------------------------------------------X

**MEMORANDUM
DECISION AND ORDER**

CV-06-1712 (BMC) (ARL)

**COGAN**, District Judge.

    This is an action in which plaintiffs claim that defendants violated the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA") and the New York State Human Rights Law ("NYSHRL"). Presently before the Court is defendants' motion for summary judgment. For the reasons set forth below, the motion is denied.

    On or about October 23, 2004, defendant Entenmann's terminated plaintiff Paul DeAngelo's employment as a Packaging Maintenance Supervisor in the Maintenance Department without offering him severance pay. Defendants claim that plaintiff was terminated as part of a planned reduction in headcount and for poor performance; plaintiff, however, argues that he was fired and denied severance pay based on defendants' discrimination against him for having a medical condition which caused him to suffer a disability and in retaliation for exercising his rights under the FMLA.

    Following plaintiff DeAngelo's termination, his supervisor, plaintiff Albert Scarpelli, questioned defendant William Zeppelin regarding the lawfulness of firing DeAngelo. In the

months following, plaintiff Scarpelli maintains that defendants retaliated against him for challenging their decision to terminate DeAngelo and then interfered with his right to take FMLA leave to care for his elderly mother following her gallbladder surgery. Defendants contend that the employment actions upon which plaintiff complains were taken for legitimate, non-retaliatory purposes. Regarding plaintiff's FMLA interference claim, defendants maintain that plaintiff did not follow the proper procedures to request FMLA leave and because plaintiff held a second job, he did not use the time off for its intended purpose.

## DISCUSSION

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view all facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 1608-09 (1970)).

A party may not defeat a motion for summary judgment solely through "unsupported assertions" or conjecture. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the moving party. Fed.R.Civ.P. 56(e); see also Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."). The nonmoving

party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256, 106 S. Ct. at 2514.

## I. Plaintiff DeAngelo's ADA Claim

Defendants contend that plaintiff DeAngelo has failed to state a claim under the ADA because he cannot establish that he was disabled within the meaning of the ADA or that he was regarded as disabled. Although the parties do not dispute that plaintiff was diagnosed with Hepatitis C in or about September 2002 and that he took medications for it, they do dispute the symptoms plaintiff suffered and the side effects caused by the medications.

Courts have found that Hepatitis C qualifies as a physical impairment under the ADA. See Sussle v. Sirina Prot. Sys. Corp., 269 F.Suppp.2d 285, 297 (S.D.N.Y. 2003). However, "[m]erely having an impairment does not make one disabled for the purposes of the ADA." Id. at 298 (quoting Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 195, 122 S.Ct. 681, 690 (2002). A plaintiff also must demonstrate that the impairment limits a major life activity. Here, there is no dispute that plaintiff suffered from Hepatitis C, but the parties' characterizations of the symptoms incurred present different pictures as to whether plaintiff's impairment limited a major life activity.

Defendants claim that plaintiff's Hepatitis C did not substantially limit any major life activities because it only caused him occasional abdominal discomfort and shortness of breath. In addition, defendants argue that plaintiff only took medication to treat Hepatitis C for four months and that there is no evidence he continued to suffer any effects from the medication after he stopped taking it. Finally, defendants maintain that plaintiff was never regarded as disabled because defendants never perceived him as being incapable of working in a broad range of jobs.

3

Plaintiff disputes defendants' characterization of the effects Hepatitis C had on him and the side effects of the medication. Plaintiff claims that Hepatitis C caused him to suffer serious abdominal pains and shortness of breath, and that these symptoms increased with frequency. In addition, he maintains that the medication he took for Hepatitis C caused him to experience severe flu-like symptoms and also led to hair loss, loss of teeth, loss of white blood cells, loss of vision, and severe breathing problems. Plaintiff also argues that defendants regarded him as unfit to work, commenting that he was not capable of working at the facility while was still sick and that he appeared weak and tired.

Plaintiff raises a factual issue on this claim, and therefore summary judgment is denied.

## II. Plaintiff DeAngelo's FMLA Claims

Defendants contend that plaintiff DeAngelo has failed to state claims under the FMLA because he was not denied any benefits to which he was entitled under the FMLA and no evidence exists of any retaliatory intent. The parties do not dispute that plaintiff was entitled to leave under the FMLA and that defendants' granted plaintiff's request for such leave, but they do dispute whether he should have received severance pay and the issue of retaliatory intent.

Defendants claim that plaintiff was not entitled to severance because he was terminated for poor performance. In addition, defendants argue that plaintiff's retaliation claim fails due to a lack of retaliatory intent. They maintain that defendant Steven Nagle was the one who decided to terminate plaintiff's employment, and he was unaware of plaintiff's FMLA leave. Therefore, they assert that no reasonable person could find a retaliatory motive.

Plaintiff maintains that defendants' proffered reasons are merely pretext. He claims that defendant Zeppelin told him that he was being terminated for his absences and not due to a reduction in force. Finally, plaintiff argues that defendants' evidence of a legitimate, non-

discriminatory reason for his termination, that is poor performance, was unfairly generated by defendants in a 2003 evaluation.

Plaintiff succeeds in establishing an issue of fact regarding whether defendants' proffered reasons for the termination are pretextual. There is conflicting deposition testimony over the reasons for plaintiff's termination and a question of fact exists as to whether defendant Nagle knew of plaintiff's FMLA situation. Finally, plaintiff's claim that his 2003 poor performance review was solely attributable to a suspension for having his feet on his desk (plaintiff claims he was resting, as a result of his sickness) is sufficient to raise an issue of fact. Therefore, the Court denies summary judgment as to this claim.

### III. Plaintiff DeAngelo's Claim under NYSHRL

Defendants' only argument regarding this claim for purposes of summary judgment is that the Court should decline to exercise pendent jurisdiction over it since it would be the only remaining claim for plaintiff DeAngelo if the Court granted summary judgment on the claims discussed above. Since the Court has declined to grant summary judgment on plaintiff's other claims, the Court retains jurisdiction over this claim.

### IV. Plaintiff Scarpelli's FMLA Retaliation Claim

Defendants contend that plaintiff Scarpelli has failed to state a claim for retaliation under the FMLA because he did not engage in protected activity and did not suffer any adverse employment action. The parties do not dispute that plaintiff made a comment questioning the lawfulness of terminating plaintiff DeAngelo to defendant Zeppelin, but they do dispute whether this comment constitutes a protected activity. Similarly, the parties agree that in the months following plaintiff DeAngelo's termination, plaintiff absorbed DeAngelo's job duties, defendant

5

Entenmann's implemented a shift rotation involving plaintiff[1], plaintiff lost his position as safety coordinator, a position he held for thirteen years, and plaintiff was later demoted and subject to supervision by a junior employee. However, defendants argue that there is no evidence that any of these actions were motivated by retaliatory animus, and plaintiff disagrees.

For an employee to establish that he engaged in a protected activity, he must put the employer on notice that he believes discrimination is occurring. See Lawrence v. Thomson Learning, Inc., No. 05 Civ. 329, 2007 WL 1593270, *31 (N.D.N.Y. Jun. 1, 2007); Velasquez v. Goldwater Mem'l Hosp., 88 F.Supp.2d 257, 264 (S.D.N.Y. 2000) (Employer "must have understood, or been able to understand, that plaintiff's opposition was directed at conduct prohibited by Title VII"). "The action does not have to be a formal written complaint, as complaining to management, protesting discrimination in general, and supporting co-workers who have filed formal charges are considered examples of protected activity in this context." Connelly v. West, No. 98 Civ. 6924, 2001 WL 102350, * (S.D.N.Y. Feb. 7, 2001) (citing Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d. Cir. 2000)). The Court cannot say based on the evidence before it that plaintiff has failed to engage in a protected activity. On the one hand, defendants are correct that a mere question does not rise to the level of being a protected activity. However, the tone and manner of plaintiff's question to Zeppelin regarding DeAngelo's termination may have in fact been sufficiently accusatory so as to put defendants on notice that plaintiff believed they were discriminating against DeAngelo. This is a question for a jury to decide.

Defendants also fail in convincing the Court that no reasonable factfinder could conclude that the actions plaintiff complains of were not adverse employment actions because there is no evidence of a retaliatory animus. Plaintiff raises an issue of fact as to whether defendants were

---

[1] Plaintiff had worked the day shift for nearly his entire 21 year tenure at Entenmann's.

6

motivated by non-legitimate reasons through various comments plaintiff claims defendants made to him and by the relatively short period of time in which these actions occurred. Although defendants allege that these actions occurred over a period of fourteen months after plaintiff questioned Zeppelin, plaintiff was a longtime employee of Entenmann's and had held certain positions and worked a certain shift for many years. A reasonable factfinder could find under these circumstances that a change in plaintiff's employment position and shift following his comment to Zeppelin raises an inference of retaliatory animus. Therefore, summary judgment as to this claim is denied.

## V.     Plaintiff Scarpelli's FMLA Interference Claim

Defendants contend that plaintiff Scarpelli has failed to demonstrate a prima facie claim under the FMLA for interference with his rights because he was not denied any benefits to which he was entitled under the FMLA. Defendants also assert that plaintiff failed to follow Entenmann's procedures when requesting leave and because he held a second job, he did not use the time off for its intended purpose. The parties do not dispute the following facts: plaintiff's mother had gallbladder surgery on November 15, 2005; on December 2, 2005 plaintiff asked defendant Zeppelin if he could stay on the night shift for an extra two weeks in order to care for his mother; Zeppelin refused plaintiff's request; Scarpelli then sought out defendants Culbertson and Nagle about the situation; the defendants informed plaintiff that they could not help him because Zeppelin had reported that plaintiff resigned; and plaintiff Scarpelli was working a second job during the shift from which he requested the FMLA leave. The parties dispute a number of facts, including plaintiff's mother's need for assistance, defendant Zeppelin's attempt to resolve the situation with plaintiff, the effective date of plaintiff's "resignation", whether plaintiff provided reasonable notice, and the relevance of plaintiff's second job.

7

Plaintiff raises an issue of fact as to whether defendants wrongly denied his request for FMLA leave. Plaintiff claims that his notice was reasonable because he gave it as soon as it became apparent to him that he needed to have time off to care for his mother.[2] Plaintiff also argues that his second job is irrelevant because his other employer provided him with the flexibility to leave whenever he needed to in order to care for his mother, and that he did in fact take his mother to doctors' appointments and assist her during the time that he had requested the FMLA leave. A question of fact also exists as to whether plaintiff resigned and when this alleged resignation became effective. Therefore, the Court must deny summary judgment as to this claim.

Accordingly, defendants' motion for summary judgment is denied. By separate Order, I will schedule this case for a pretrial conference and for trial.

**SO ORDERED.**

s/Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
December 11, 2007

---

[2] Plaintiff alleges that the vacation time he took before his request for FMLA leave was used to care for his mother and to monitor her recovery, which took longer than he had initially anticipated.